UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Timothy Dasler,

        Plaintiff,

        v.

Jennifer Knapp,
formerly known as Jennifer Dasler,

        Defendant.

Civil Action No. 2:21–cv–135

**ORDER GRANTING APPLICATION TO PROCEED**
**WITHOUT PREPAYING FEES OR COSTS AND DISMISSING COMPLAINT IN PART**
(Docs. 1, 3)

       Plaintiff Timothy Dasler, a New Hampshire resident representing himself, seeks to file a civil Complaint alleging claims under state and federal law against Defendant Jennifer Knapp, his ex-wife.  Dasler filed an Application to Proceed *in Forma Pauperis*, or without prepaying fees or costs, under 28 U.S.C. § 1915, supported by the required financial Affidavit.  (Docs. 1, 1-2.)  Because Plaintiff's Application satisfies the requirements of 28 U.S.C. § 1915(a), Plaintiff's request to proceed without paying the filing fee (Doc. 1) is GRANTED.  For the reasons set forth below, however, Plaintiff's Complaint (Doc. 3) is DISMISSED IN PART for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed. R. Civ. P. 12(b)(6).

## Analysis

### I.    Plaintiff's Claims

       Plaintiff's claims arise from a series of alleged events related to a child custody dispute with Defendant and associated Vermont state-court proceedings.  Plaintiff generally seeks damages based on the allegedly unlawful conduct of Defendant, as well as redress for alleged

deficiencies in the law and procedure that apply in Vermont family court proceedings.  Plaintiff asserts that the court has both federal-question and diversity jurisdiction as well as supplemental jurisdiction over his state-law claims.

He alleges nine claims against Defendant: (1) a claim under 42 U.S.C. § 1983 based on violations of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution; (2) malicious prosecution and abuse of process; (3) intrusion upon seclusion; (4) stalking, false imprisonment, and kidnapping; (5) assault; (6) interference with contract and interference with visitation; (7) fraud; (8) intentional infliction of emotional distress; and (9) slander and libel. Plaintiff seeks declaratory judgments "to prevent continued abuse through the Vermont Court system."  (Doc. 3 at 19, ¶ 124.)  He specifically seeks declarations as to the constitutionality of a Vermont domestic relations law, as well as the procedures that apply in the state's family court. In addition to declaratory judgments, he seeks compensatory and punitive damages and "[r]elief from enforcement of [a] fraudulently obtained custody order."  (*Id.* at 20.)

Plaintiff's factual allegations are discussed in connection with the analysis of each of his claims, as that is how they appear in the proposed Complaint.

## II.    Standard of Review

Under the *in forma pauperis* statute, the court conducts an initial screening of the complaint.  *See* 28 U.S.C. § 1915(e)(2).  To state a claim for relief, a complaint must contain a short and plain statement of the grounds for the court's jurisdiction; a short and plain statement of the claim showing that the claimant is entitled to relief; and a demand for the relief sought. Fed. R. Civ. P 8(a)(1)–(3).  The court is required to read a self-represented plaintiff's complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *see also Harris v.*

*Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam) (noting district courts must afford "special solicitude" to a self-represented litigant, including reading the complaint liberally and construing it to raise the strongest arguments it suggests); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

In determining whether a complaint states a claim, the court must "accept as true all of the allegations contained in a complaint" and decide whether the complaint states a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). All complaints must contain "sufficient factual matter[] . . . to state a claim" for relief. *Id.* (internal quotation marks omitted). While "special solicitude" is required, self-represented litigants nevertheless must satisfy the plausibility standard set forth in *Iqbal*. *See Harris*, 818 F.3d at 57; *Harris v. Mills*, 572 F.3d 66, 68, 72 (2d Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Nevertheless, the court must dismiss the complaint if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Plaintiff alleges this Court has both federal-question and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332(a)(1). He asserts diversity jurisdiction applies because he and Defendant are from different states and the amount in controversy is over $75,000.[1] Where a

---

[1] Plaintiff contends that damages in the case "will exceed $75,000[,] which include[s] lost business, lost reputation, costs in defending against malicious prosecution and abuse of process, unconstitutional deprivation of civil rights, and intentional torts." (Doc. 3 at 4.) At this early stage of the proceedings, the Court accepts Plaintiff's valuation of his alleged claims for purposes of the amount-in-controversy requirement under 28 U.S.C. § 1332. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938).

3

federal court sits in diversity jurisdiction considering state-law claims, the court applies state law

to the substantive issues.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

A.     **Plaintiff Has Not Stated Plausible Claims Under 42 U.S.C. § 1983**

1.     **Section 1983 Claim Based upon the Fourth, Fifth, and Fourteenth Amendments**

In Claim 1 of his Complaint, Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that

Defendant deprived him of his rights under the Fourth, Fifth, and Fourteenth Amendments.  His

§ 1983 claim appears to be premised on Defendant obtaining "a temporary ex[]parte order

stripping [him] of parental rights and consequently forcing him to pay her child support in the

equivalent of a pre[]trial attachment."  (Doc. 3 at 6, ¶ 1.)  Although Plaintiff suggests that family

court process and procedure itself ultimately worked to his detriment, he alleges that it was

Defendant's allegedly improper use of those family court remedies that resulted in the

deprivation of his rights.  (*See id.* ¶ 5 ("As a result of [Defendant's] usurpation of court authority

it was neither able to preserve [Plaintiff's] rights, nor could it require her to meet any burden of

proof (based upon state court precedent).");  ¶ 6 ("Because of [Defendant's] pre[]trial ex[] parte

action the burden shifted to [Plaintiff] to prove it was harmful for her to retain custody rather

than requiring that she justify the restriction of his rights.  Through her fraudulent accusations

and ex[] parte action she was able to deprive [Plaintiff] of an opportunity to have a fair

hearing.")).  Allegedly as a consequence of Defendant's improper use of state-court remedies, on

May 15, 2017, Defendant obtained a temporary ex parte order that denied him parental rights.

Congress enacted 42 U.S.C. § 1983 to provide a statutory remedy for violations of the

Constitution and other federal laws.  The statute authorizes suit against a "person who, under

color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes

to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured

by the Constitution and laws." 42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff "must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived [the plaintiff] of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  Section 1983 does not reach the conduct of private individuals. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (noting that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful" (internal quotation marks omitted)).  However, "state action may be found when there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009) (internal quotation marks omitted).

Plaintiff has not plausibly alleged that Defendant was acting under color of state law when she allegedly acted in a manner that deprived him of his constitutional rights.  A person's mere participation in a family court proceeding, or otherwise availing herself of remedies in that forum, does not make a person a "willful participant in joint activity with the State" for § 1983 purposes. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  Plaintiff's allegations that Defendant allegedly made "fraudulent accusations" in the custody proceedings are insufficient to render Defendant a "state actor." *See, e.g.*, *Davis v. Whillheim*, 17 Civ. 5793 (KPF), 2019 WL 935214, at *10 (S.D.N.Y. Feb. 26, 2019) (holding that social worker and her supervisor were not state actors when they submitted allegedly defective reports to Family Court during child visitation proceedings).

Additionally, Plaintiff has not plausibly alleged substantive violations of the Fourth, Fifth, and Fourteenth Amendments against Defendant. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" absent "probable cause, supported by oath or affirmation." U.S. Const. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (footnotes omitted). Plaintiff has not specified how his Fourth Amendment rights were infringed by Defendant's alleged conduct. Construing the Complaint to raise the strongest argument it suggests, *see Harris*, 818 F.3d at 56, Plaintiff may be claiming that the adverse custody determination in state court interfered with his possessory interest in a relationship with his child. Nevertheless, even assuming that Plaintiff has adequately alleged an abridgment of a protected right, the Fourth Amendment governs "only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official." *Jacobsen,* 466 U.S. at 113 (internal quotation marks omitted). In the absence of an allegation that Defendant was acting as an instrument or agent of the government, Plaintiff cannot plausibly allege a claim under § 1983 for a Fourth Amendment violation. *See United States v. Bennett*, 709 F.2d 803, 805 (2d Cir. 1983) (observing that "some degree of governmental knowledge and acquiescence" must be established to find a private person's search violates the Fourth Amendment).

The Fifth Amendment provides, in relevant part, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Fifth

Amendment's Due Process Clause protects citizens against only federal government actors, not State officials." *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) (internal quotation marks omitted).  Because Plaintiff does not allege Defendant was a federal government actor, or that her alleged conduct was connected in any way with a federal government actor, he has not plausibly alleged a claim under § 1983 for a Fifth Amendment due process violation.

Plaintiff appears to claim that Defendant's allegedly improper use of state-court procedures in the child custody proceedings violated his right to procedural due process under the Fourteenth Amendment.  (Doc. 3 at 6, ¶ 6.)  He specifically claims that Defendant's "fraudulent accusations and ex[] parte action" deprived him of "an opportunity to have a fair hearing."  (*Id*.)  The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. The Supreme Court has recognized "[t]he fundamental liberty interest of natural parents in the care, custody, and management" of their children.  *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).  Thus, there is a "critical need for procedural protections" when a parent is facing the potential loss of his parental rights.  *Id*.  Nevertheless, "[i]t is axiomatic that the . . . Fourteenth Amendment[] . . . appl[ies] only to state actors."  *Leeds v. Meltz*, 85 F.3d 51, 54 (2d Cir. 1996). As Plaintiff does not allege Defendant was a state actor, he has not plausibly alleged a claim under § 1983 for a Fourteenth Amendment due process violation.

Plaintiff has not stated a plausible claim under § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments.  Therefore, Claim 1 must be dismissed.

### 2.    Malicious Prosecution and Abuse of Process

In Claim 2 of his Complaint, Plaintiff alleges claims for malicious prosecution and abuse of process against Defendant.  Plaintiff alleges Defendant "inundated [him] with filings through 2017-2018 usually without probable cause and/or for purposes other than the legitimate use of the filings."  (Doc. 3 at 6, ¶ 7.)  He asserts that on May 12, 2017, Defendant falsely accused him of assault "for the purpose of controlling their child custody case," and this accusation resulted in criminal charges.  (*Id.* at 6, 7, ¶¶ 8, 16.)  On May 15, 2017, Defendant filed a motion for a relief from abuse order (RFAO) based upon the fraudulent accusations, and on July 19, 2017, she filed motions to suspend visitation and for a RFAO for the child based on a false claim of unexplained injury to their minor child.  (*Id.* at 6, 7, ¶¶ 9, 11–13.)  Plaintiff alleges the RFAO for the child and the motion to suspend visitation were both denied.  Plaintiff further alleges Defendant routinely filed unsuccessful motions "to interfere with [his] contact" with the child after he requested "makeup visitation after she cancelled visits."  (*Id.* at 8, ¶ 20; *see also* ¶ 19.)  He asserts Defendant's false accusations of stalking on November 11, 2017, and child endangerment on February 25, 2018, did not result in criminal charges.  On February 23, 2018, the court ordered equal visitation and issued a final divorce order on August 16, 2018.  Plaintiff pled no contest to a lesser charge of disturbing the peace in October 2019, "resolving the criminal accusation [of assault] without a finding that would be relevant in the Family Court proceedings."  (*Id.* at 9, ¶ 32.)

Plaintiff asserts the proceedings in this Court "will establish that Ms. Knapp fabricated probable cause for the purpose of obtaining a fraudulent judgment and RFA[O] in an extortion scheme to force Mr. Dasler to give up his rights under the threat of false imprisonment and/or being stripped of parent-child contact entirely."  (*Id.* ¶ 34.)  As Plaintiff does not specify whether

his claims for malicious prosecution and abuse of process are brought under state or federal law, the Court reviews the sufficiency of the allegations under both.

a.      Malicious Prosecution

"A malicious prosecution claim under § 1983 follows the state law standard, so the federal and state law claims are analyzed together." *Grega v. Pettengill*, 123 F. Supp. 3d 517, 542 (D. Vt. 2015) (internal citation omitted).  To state a § 1983 claim for malicious prosecution, a plaintiff must allege "a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment," as well as that "criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor." *Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018) (alteration in original) (internal quotation marks omitted).  As explained above, in the absence of allegations that Defendant was acting as an instrument or agent of the government, Plaintiff cannot plausibly allege a claim under § 1983 for a Fourth Amendment violation.

Under Vermont law, a claim of malicious prosecution requires a plaintiff to plausibly allege that "a party instituted a proceeding against the individual without probable cause, that the party did so with malice, that the proceeding terminated in that individual's favor, and that the individual suffered damages as a result of the proceeding." *Siliski v. Allstate Ins. Co.*, 174 Vt. 200, 203, 811 A.2d 148, 151 (2002).  "[I]f the dismissal somehow indicates that the [plaintiff] is innocent of wrongdoing, it will be considered a favorable termination.  On the other hand, if the reason for dismissal is not inconsistent with a [plaintiff's] wrongdoing, it will not be considered a favorable termination." *Id.* at 204, 811 A.2d at 151–52 (internal quotation marks and citation omitted).

Plaintiff contends that he was charged with assault based on Defendant's false accusations.  (Doc. 3, at 6–7, ¶¶ 8, 16.)  The Second Circuit has observed that "the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false."  *White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988); *see also Levy v. City of New York*, 935 F. Supp. 2d 575, 589 (E.D.N.Y. 2013) ("Plaintiff has accused Defendants of providing false information to the prosecutor, and when such false information influences a decision whether to prosecute, [he] may be held liable for malicious prosecution." (internal quotation marks omitted)).  However, even assuming Plaintiff could show that Defendant provided "knowingly and maliciously false" information that influenced the state's decision to bring an assault charge, he must further plausibly allege that the proceeding terminated in his favor.  *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").  In the Second Circuit, "affirmative indications" of innocence are required to plausibly allege the "favorable termination" element.  *Lanning*, 908 F.3d at 25 ("Our prior decisions requiring affirmative indications of innocence to establish 'favorable termination' therefore continue to govern § 1983 malicious prosecution claims . . . .").  Plaintiff asserts he pled no contest to the offense of disturbing the peace.  In the absence of allegations of an affirmative finding that Plaintiff was innocent of wrongdoing, he has not plausibly alleged the favorable termination element.  Plaintiff has not plausibly alleged a claim of malicious prosecution under either federal or state law.

b.      Abuse of Process

Under Vermont law, a plaintiff "alleging abuse of process must demonstrate 1) an illegal, improper or unauthorized use of a court process; 2) an ulterior motive or an ulterior purpose; and 3) resulting damage to the plaintiff." *Weinstein v. Leonard*, 2015 VT 136, ¶ 22, 200 Vt. 615, 625, 134 A.3d 547, 554–55 (internal quotation marks omitted).  "Abuse of process" involves an individual "us[ing] a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed[.]" *Weingarten v. Chester*, Case No. 2:17-cv-00211, 2019 WL 4059839, at *6 (D. Vt. Aug. 28, 2019) (second alteration in original) (quoting Restatement (Second) of Torts § 682 (June 2019)).  "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Jacobsen v. Garzo*, 149 Vt. 205, 207, 542 A.2d 265, 267 (1988).

Plaintiff alleges Defendant acted with the ulterior purpose of controlling the child custody case in making allegedly false accusations of assault, stalking, and child endangerment.  But it was the State's Attorney, not Defendant, who charged Plaintiff with assault and initiated the court process.  *See* 24 V.S.A. § 361(a).  To the extent Plaintiff is claiming that any criminal prosecution by state authorities was actionable abuse of process, he has not alleged that Defendant acted in concert with state prosecutors to engage in illegal or unauthorized use of the criminal court process.

Plaintiff also appears to claim that Defendant improperly used civil process in family court to gain an advantage in the child custody/visitation dispute.  (Doc 3 at 6, ¶ 7 ("Ms. Knapp inundated Mr. Dasler with filings through 2017–2018 usually without probable cause and/or for purposes other than the legitimate use of the filings.")); (*id.* at 8, ¶ 24 ("It was clear that the flood of motions was an extortion scheme seeking to make Mr. Dasler cave because he couldn't afford

the litigation and she could continue to obstruct contact without needing to prove the merits.")). However, even assuming that Defendant's actions in court were intended to limit or deny Plaintiff's contact with his child, the ultimate allegation is that Defendant employed the civil court process—unfairly in Plaintiff's view—to litigate custody issues in the family court. As that is the purpose for which that particular family court process is designed, the allegation is insufficient to state a claim.

Plaintiff thus fails to plausibly allege the essential elements of an abuse-of-process claim.

### 3.    Intrusion upon Seclusion

In Claim 3 of his Complaint, Plaintiff asserts a claim for intrusion upon seclusion against Defendant. Plaintiff alleges that during his arrest following Defendant's May 2017 allegation of assault, Defendant used his computer to intercept, read, and delete emails from his private email account. He further alleges that on May 30, 2017, Defendant "secretly recorded a FaceTime conversation with [him] while he was in [New Hampshire] and such recording is a crime." (Doc. 3 at 10, ¶ 38.)

To state a claim for intrusion upon seclusion under Vermont law, a plaintiff must allege an "intentional interference with [his] interest in solitude or seclusion, either as to [his] person or as to [his] private affairs or concerns, of a kind that would be highly offensive to a reasonable [person]." *Weinstein*, 2015 VT 136, ¶ 29 (last alteration in original) (internal quotation marks omitted). "The intrusion must be substantial." *Id.* (internal quotation marks omitted). The conduct must be "repeated with such persistence and frequency as to amount to a course of hounding the plaintiff." *Id*. (quoting Restatement (Second) of Torts § 652B cmt. d).

Plaintiff alleges that Defendant used his laptop "to intercept, read, and delete emails from [his] private email account." (Doc. 3 at 9–10, ¶ 37.) He further alleges that "[o]n multiple

occasions" Defendant "followed him with intent of controlling" his movement during visitation with his child.  (*Id.* at 10, ¶¶ 41, 43, 44, 46.)  Plaintiff states that Defendant "entered [his] car on one occasion during visitation."  (*Id.* at 11, ¶ 48.)  He contends that, on another occasion, Defendant and her parents allegedly entered the back seat of his car to take a photo of his work tools, and then called the police claiming that the tools "endanger[ed]" the child.  (*Id.* ¶ 51.)  In addition to allegedly hiring others to surveil the plaintiff, Plaintiff also alleges that Defendant placed a tracking device on their child to monitor where he went with the child during visitation. (*Id.* at 12, ¶¶ 58, 59.)  Considering the entirety of Plaintiff's allegations, the Court finds at this stage that Plaintiff has alleged a plausible claim for intrusion upon seclusion.

### 4.    False Imprisonment, Stalking, and Kidnapping

In Claim 4 of his Complaint, Plaintiff asserts claims for stalking, false imprisonment, and kidnapping.  Plaintiff alleges Defendant obtained a temporary RFAO on May 15, 2017, based on the false allegation of assault, and obtained a final RFAO on August 1, 2017, "while Mr. Dasler pled the 5th."  (*Id.* at 10, ¶ 39.)  On June 9, 2017, "the parties signed a Mediation Agreement including [four] hours [per] week of visitation at the local aquatic center or museum, and agreed to work to 'normalize contact.'"  (*Id.* ¶ 40.)  Plaintiff asserts Defendant used the threat of criminal penalties as provided in the RFAO to "control his freedom of movement."  (*Id.* ¶ 42.)  He further alleges Defendant "admitted in at least one instance that her intent was to force him to remain inside the aquatic center during his visitation by using the RFA[O] to control his freedom of movement."  (*Id.* ¶ 44.)  He asserts Defendant's actions unreasonably interfered with his freedom and served no legitimate purpose.

Plaintiff further alleges that Defendant would watch him "for hours at a time."  (*Id.* at 10, ¶ 47.)  On one occasion during a visitation, Defendant entered Plaintiff's car.  Specifically, on

February 25, 2018, Defendant or her parents entered his car and "expos[ed] some tools in a tool case, t[ook] a photo, and then call[ed] the police alleging 'child endangerment.'"  (*Id.* at 11, ¶ 51.)  Defendant then "withheld the child for an hour awaiting the arrival of police in the attempt of framing Mr. Dasler again so she could obstruct the implementation of the court [visitation] order."  (*Id.* ¶ 54.)

Plaintiff asserts Defendant hired a person to "stak[e] out the daycare on [February 26, 2018,] to observe Mr. Dasler and the minor child's interaction there."  (*Id.* ¶ 55.)  On February 28, 2018, while Plaintiff and the child met with the child's therapist, cameras placed to observe his car "show[] a man circling his car twice shortly after Mr. Dasler went inside.  The man t[ook] his trail camera, but the dash cam[era] still caught his surveillance of Mr. Dasler's vehicle."  (*Id.* at 11–12, ¶ 57.)  Plaintiff asserts that "it seems very likely that Ms. Knapp was involved with this man and his surveillance of the vehicle and taking the camera."  (*Id.* at 12, ¶ 58.)  He further alleges that in the summer of 2020, Defendant "put a GPS tracking and recording device on their minor child without Mr. Dasler's knowledge so he could be tracked and recorded without his knowledge."  (*Id.* ¶ 59.)

        a.     False Imprisonment

"A false imprisonment claim under § 1983 tracks the state-law elements of the claim." *Grega*, 123 F. Supp. 3d at 548.  "Under Vermont law, a person commits the crime of false imprisonment, or unlawful restraint in the second degree, 'if the person . . . knowingly restrains another person.'"  *Id.* (omission in original) (quoting 13 V.S.A. § 2406); *see State v. Alexander*, 173 Vt. 376, 382, 795 A.2d 1248, 1253 (2002) (noting that the "Vermont equivalent" of false imprisonment is "unlawful restraint in the second degree").  To "restrain" means "to restrict substantially the movement of another person without the person's consent or other lawful

authority by, among other things, confining the restrained person for a substantial period." *State of Vermont v. Kuhlmann*, 2021 VT 52, ¶ 28, 2021 WL 3009811, at *6 (July 16, 2021) (internal quotation marks omitted).

A claim for false imprisonment or arrest under § 1983 requires a plaintiff to allege that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam) (internal quotation marks omitted).  A false imprisonment claim under Vermont law requires essentially the same showing. *See Connary v. Field*, No. 12-276, slip op. at 3 (Vt. Feb. 14, 2013) (requiring proof the defendant "intended to confine plaintiff without plaintiff's consent, and that confinement was not otherwise privileged").

To the extent that Plaintiff is alleging a § 1983 claim for false imprisonment, he has failed to state a plausible federal claim because he has not alleged that Defendant was a state actor.  To state a claim under Vermont law, Plaintiff must assert factual allegations supporting each element of the intentional tort, including that the confinement was not otherwise privileged. Even construing the allegations with special solicitude, the Court cannot infer that any restraint or confinement Plaintiff experienced was not "otherwise privileged" by the terms of the court issued RFAO.

Further, a statute of limitations of three years applies to a civil claim for false imprisonment.  *See* 12 V.S.A. § 512(2) (establishing that an action for false imprisonment "shall be commenced within three years after the cause of action accrues, and not after").  Although the statute of limitations is ordinarily an affirmative defense that must be raised in an answer, the issue may be decided on a Rule 12(b)(6) motion if the untimeliness of the claim is apparent on

the face of the complaint.  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12

(2d Cir. 2014).  If the statute of limitations has expired, even if the other elements of the claim

are established, Plaintiff cannot show an entitlement to relief and the claim must be dismissed.

The allegations in Plaintiff's Complaint appear to relate to events occurring in early 2018.

Unless Plaintiff can allege an unlawful confinement that occurred after June 1, 2018—within

three years of the filing of his action—his cause of action is barred by the statute of limitations.

*See Ward v. City of New York*, 777 F. App'x 540, 542 (2d Cir. 2019) (affirming sua sponte

dismissal of self-represented plaintiff's claims as untimely because "a complaint may be

dismissed [as untimely] if the defense is plain from the face of the complaint").

> b.    Stalking

As stalking is a criminal offense under Vermont law, *see* 13 V.S.A. §§ 1061–63, civil

plaintiffs do not have authority to bring a private cause of action for violation of a criminal

statute.  *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994).

Vermont also authorizes civil protection orders against stalking.  *See* 12 V.S.A. §§ 5131–38.

Under the civil statute, stalking means:

> to engage purposefully in a course of conduct directed at a specific person that the person engaging in the conduct knows or should know would cause a reasonable person to:
>
> (A) fear for his or her safety or the safety of a family member; or
>
> (B) suffer substantial emotional distress as evidenced by:
>
>> (i) a fear of unlawful sexual conduct, unlawful restraint, bodily injury, or death; or
>>
>> (ii) significant modifications in the person's actions or routines, including moving from an established residence, changes to established daily routes to and from work that cause a serious disruption in the person's life, changes to the person's employment or work schedule, or the loss of a job or time from work.

*Id.* § 5131(6).  A course of conduct means "two or more acts over a period of time, however short, in which a person follows, monitors, surveils, threatens, or makes threats about another person, or interferes with another person's property."  *Id.* § 5131(1)(A).  However, Vermont's civil stalking statute vests the Vermont Superior Court with jurisdiction over such claims.  *Id.* § 5132(a).  Accordingly, this Court does not have authority under state law to issue a civil protection order under the statute.

The Court addresses Plaintiff's proposed claim for kidnapping in Part II.A.6, *infra*.

### 5.    Assault

Plaintiff alleges a claim of assault in Claim 5 of his Complaint.  He bases his assertion on a physical altercation that occurred on May 12, 2017.  He alleges that Defendant "set out to frame him for assault" and used physical force against him, including repeatedly pushing him and striking him with an open palm.  (Doc. 3 at 12, ¶ 63; *id.* at 13, ¶¶ 71, 75.)  Plaintiff called the police seeking "help leaving safely."  (*Id.* at 14, ¶ 80.)  Plaintiff states that he was arrested in connection with the altercation.

"At common law, the civil tort of assault is defined as 'any gesture or threat of violence exhibiting an [intention] to assault, with the means of carrying that threat into effect . . . unless immediate contact is impossible.'"  *Billado v. Parry*, 937 F. Supp. 337, 343 (D. Vt. 1996) (omission in original) (quoting *Bishop v. Ranney*, 59 Vt. 316, 7 A. 820, 820–21 (1887)).  "[I]f the party threatening the assault has the ability, means, and apparent intention, to carry his threat into execution, it may in law constitute an assault."  *Wilson v. Smith*, 144 Vt. 358, 360, 477 A.2d 964, 965 (1984) (internal quotation marks and alterations omitted).  The tort of battery "is an intentional act that results in harmful contact with another."  *Christman v. Davis*, 2005 VT 119, ¶ 6, 179 Vt. 99, 101, 889 A.2d 746, 749.

Under Vermont law, a statute of limitations of three years applies to claims for assault and battery.  *See* 12 V.S.A. § 512(1) (establishing that an action for assault and battery "shall be commenced within three years after the cause of action accrues, and not after").  If the statute of limitations has expired, even if the other elements of the claim are established, Plaintiff cannot show an entitlement to relief and the claim must be dismissed.  Unless Plaintiff can demonstrate that he did not discover the assault or battery, and therefore his cause of action did not accrue, until after June 1, 2018—within three years of the filing of his action—the applicable statute of limitations bars his claim based on an alleged assault that occurred on May 12, 2017.  Thus, Defendant's proposed Complaint fails to state a plausible claim for assault.

### 6.  Interference with Contract and Visitation

In Claim 6 of his Complaint, Plaintiff alleges that Defendant committed the torts of interference with contract and interference with visitation.  He alleges that Defendant used the false allegation of assault and resulting RFAO to obtain a temporary order restricting his contact with their minor child.  (Doc. 3 at 14, ¶ 82.)  He further alleges that, after the parties reached an agreement on June 9, 2017 regarding contact with their minor child, on July 19, 2017, Defendant "unilaterally suspended visitation."  (*Id.* ¶ 84.)  Additionally, on February 25, 2018, Defendant sought to obstruct Defendant's first overnight visit following the February 23, 2018 state court order granting equal visitation "by framing [Plaintiff] for [c]hild [e]ndangerment" and subsequently withholding "the child for an hour awaiting the arrival of police."[2]  (*Id.* at 11, ¶¶ 50, 54.)

---

[2]  The Court construes this allegation as the basis for Plaintiff's kidnapping claim.  Because kidnapping is a crime, *see* 18 U.S.C. § 1201; 13 V.S.A. § 2405, and private litigants cannot prosecute criminal actions in federal court, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."), the Court considers the allegation in connection with Plaintiff's interference-with-visitation claim.

"[U]nder Vermont law, a person who abducts or otherwise compels or induces a minor child to leave a parent who is legally entitled to her custody, with knowledge that the parent does not consent, is subject to liability to the parent." *See Jenkins v. Miller*, 983 F. Supp. 2d 423, 451–52 (D. Vt. 2013). Construing Plaintiff's Complaint to raise the strongest claim it suggests, the Court determines at this stage that Plaintiff has stated a plausible claim of tortious interference with his custodial rights because he alleges Defendant knowingly prevented his authorized visitation.

### 7.    Fraud

In Claim 7 of his Complaint, Plaintiff asserts a fraud claim against Defendant. He alleges that Defendant "obtained judg[]ments through fraud." (Doc. 3 at 15, ¶ 89.) Plaintiff asserts that evidence of Defendant's fraud "was not available at the time of the [family court proceedings] and the extrinsic fraud denied the court jurisdiction to preserve Mr. Dasler's rights." (*Id.* ¶ 93.) He states that "the fraudulently obtained judgment is not an error of the court, but a fraud on the part of Ms. Knapp to which the court processes in Vermont are unable to provide redress." (*Id.* ¶ 94.) He concludes "the fundamental issue is illustrated by Ms. Knapp's ability to take advantage of Vermont processes to usurp the authority of the court for her own purposes and preclude adjudication with her own pre-judg[]ment." (*Id.* at 16, ¶ 99.)

The elements of fraud under Vermont law are: (1) "an intentional misrepresentation of existing fact"; (2) "the misrepresentation was false when made"; (3) the misrepresentation was "known to be false by the maker"; (4) the misrepresentation "was not open to the defrauded party's knowledge"; and (5) the misrepresentation "was relied on by the defrauded party to his damage." *Silva v. Stevens*, 156 Vt. 94, 102, 589 A.2d 852, 857 (1991) (internal quotation marks omitted). To state a claim for fraud in federal court, a plaintiff must "state with particularity the

circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Here, Plaintiff has not alleged that

Defendant's allegedly false allegations of assault and child endangerment were not open to his

knowledge.  Indeed, the essence of his Complaint is that Defendant made these false claims

against him.  Further, Plaintiff may not claim the reliance of the court on Defendant's alleged

misrepresentations to satisfy the reliance element of his fraud claim.  *See Felis v. Downs Rachlin*

*Martin PLLC*, 2015 VT 129, ¶ 18, 200 Vt. 465, 475,133 A.3d 836, 844 (acknowledging the rule

that "third-party reliance, without direct reliance by the plaintiff, [i]s insufficient to satisfy the

reliance requirement.").

Plaintiff appears to be attempting to assert a claim of fraud upon the state court.  Such a

claim could involve a party's attempt to improperly influence the court through, for example,

fabrication of evidence.  *See Godin v. Godin*, 168 Vt. 514, 519, 725 A.2d 904, 908 (1998).

Although the state court can vacate a judgment based on a finding of fraud on the court, *see* Vt.

R. Civ. P. 60(b)(3) (providing relief from judgment for "fraud . . . , misrepresentation, or other

misconduct of an adverse party"), a party cannot bring a private cause of action in federal court

under this theory.  *See Interstate Fire & Cas. Co. v. 1218 Wis., Inc.*, 136 F.3d 830, 836 (D.C. Cir.

1998) (stating that plaintiff cannot claim damages in tort for "fraud upon the court" because

remedy lies within court's equitable power to revise judgment).[3]

Plaintiff has failed to allege a plausible claim of fraud against Defendant.

### 8.    Intentional Infliction of Emotional Distress

Plaintiff alleges in Claim 8 of his Complaint that, due to the "combination of all

preceding claims" in the Complaint, Defendant intentionally caused him emotional distress.

---

[3]  Vermont Rule of Civil Procedure 60(b) further provides: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court."

(Doc. 3 at 16, ¶ 100.)  Plaintiff alleges that Defendant's denying him contact with his daughter "for weeks at a time" subjected him to "intense distress."  (*Id.* at 17, ¶ 104.)  He further alleges Defendant has "ma[d]e him feel constantly in danger."  (*Id.* at 18, ¶ 114.)

In Vermont, to state a claim for intentional infliction of emotional distress, a plaintiff must plausibly allege conduct that (1) was "extreme and outrageous"; (2) was "intentional or reckless"; and (3) "cause[d] severe emotional distress."  *Baptie v. Bruno*, 2013 VT 117, ¶ 24, 195 Vt. 308, 318, 88 A.3d 1212, 1219 (internal quotation marks omitted).  "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community."  *Denton v. Chittenden Bank*, 163 Vt. 62, 66, 655 A.2d 703, 706 (1994) (alteration and internal quotation marks omitted).  Liability may not be predicated on "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id.* (internal quotation marks omitted). "[W]hether a jury could reasonably find that the conduct at issue meets this test" is a "threshold question" for "the court to determine."  *Dulude v. Fletcher Allen Health Care, Inc.*, 174 Vt. 74, 83, 807 A.2d 390, 398 (Vt. 2002).

Plaintiff alleges that Defendant has purposefully made false allegations that have resulted in criminal prosecution of Plaintiff, as well as "perpetually threatened . . . court action."  (Doc. 3 at 16, ¶ 101.)  He further alleges that Defendant made "regular accusations" in connection with the child custody dispute that caused him to believe that "he was not safe anywhere and could be subjected to court action without cause."  (*Id.* ¶ 102.)  According to Plaintiff, Defendant also made "false allegations" that he had injured his child.  (*Id.* at 17, ¶ 104.)  As a result of these events, Plaintiff has suffered "intense distress."  (*Id.*)  Considering the allegations in Plaintiff's

Complaint as a whole, the Court finds that Plaintiff has alleged a plausible claim for intentional infliction of emotional distress at this stage.

### 9.    Slander and Libel

In Claim 9 Plaintiff alleges that Defendant "falsely reported assault and abuse claims to the minor child's daycare providers and school district;" "falsely reported such events and 'attempted kidnapping' to extended family in the area;" and "appears to have reported such acts to [his] former employer."  (Doc. 3 at 19, ¶¶ 120–22.)

Under Vermont law, to state a claim for defamation, which comprises libel and slander, a plaintiff must establish the following elements:

> (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages.

*Russin v. Wesson*, 2008 VT 22, ¶ 5, 183 Vt. 301, 303, 949 A.2d 1019, 1020.  Plaintiff's proposed Complaint does not identify the specific false and defamatory language at issue or when the allegedly defamatory statements were made.  "Vagueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim" because "the complaint [must] afford defendant sufficient notice of the communications complained of to enable him to defend himself."  *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017) (alteration in original) (internal quotation marks omitted).  Because Plaintiff has not alleged a specific statement made by Defendant or why the statement was allegedly false, he has failed to properly plead a defamation, slander, or libel claim.[4]

---

[4] A statute of limitations of three years also applies to a slander or libel claim.  *See* 12 V.S.A. § 512(3) (establishing that an action for slander and libel "shall be commenced within three years after the cause of action accrues, and not after").  However, given that Plaintiff has not specified the dates of the allegedly defamatory statements in his description of the relevant facts in Claim 9, the Court cannot determine whether the claim is time-barred based on the allegations of the Complaint.

**III.     Subject-Matter Jurisdiction over Plaintiff's Remaining Claims**

Federal courts "have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*."  *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  "[T]he party asserting federal jurisdiction bears the burden of establishing jurisdiction" exists.  *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006).

As noted, Plaintiff has alleged the Court may exercise federal-question subject-matter jurisdiction under 18 U.S.C. § 1331.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) ("A plaintiff properly invokes [28 U.S.C.] § 1331 [federal-question] jurisdiction when she pleads a colorable claim 'arising under' the Federal Constitution or laws" of the United States.).  "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).  The Court dismisses all federal claims for failure to state a claim.  Accordingly, in the absence of another basis for subject-matter jurisdiction, the Court would lack jurisdiction over the remaining state-law claims.

Plaintiff also contends that the Court may exercise diversity jurisdiction under 18 U.S.C. § 1332.  To raise a claim under diversity jurisdiction, the amount in controversy in the case must exceed $75,000, exclusive of interest and costs, and the matter must be "between . . . citizens of different States."  28 U.S.C. § 1332(a).  In other words, the plaintiff must be from a different state than the defendant.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014) (explaining complete

diversity requires that "all plaintiffs . . . be citizens of states diverse from those of all defendants").  Plaintiff alleges that he is a New Hampshire resident and Defendant is a Vermont resident and that the "damages to be determined at trial will exceed $75,000."  (Doc. 3 at 4.) Accordingly, diversity jurisdiction provides the Court with subject-matter jurisdiction over Plaintiff's remaining state-law claims.

To the extent it is ultimately determined that the Court may properly exercise diversity jurisdiction over Plaintiff's state-law claims, the "domestic relations" exception may nevertheless bar the Court's jurisdiction in this matter.  The Supreme Court has long held that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."  *Ex parte Burrus*, 136 U.S. 586, 593–94 (1890); *see also Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).  To the extent that Plaintiff's remaining claims arise from the state-court proceedings pertaining to custody of the minor child and the issuance of an RFAO against him, this Court may lack jurisdiction.  For example, Plaintiff's claims that the state-court orders were obtained by fraud may be grounded in family law and arise solely from family court proceedings.  Consequently, any request for "[r]elief from enforcement of fraudulently obtained custody order," (Doc. 3 at 20) would also be barred.

## IV.    Remaining Claims; Requirements of the Court

For the reasons discussed above, many of Plaintiff's claims do not survive screening under 28 U.S.C. § 1915(e)(2).  The allegations that remain after screening are the state-law claims for intrusion upon seclusion (Claim 3), interference with custodial rights (Claim 6), and intentional infliction of emotional distress (Claim 8).  For the claims that remain, the following paragraphs are intended to assist Plaintiff, as a self-represented litigant, by identifying certain

requirements of this Court.  Failure to comply with these requirements may result in the dismissal of the complaint.

Because Plaintiff is not represented by a lawyer, he is reminded that the Federal Rules of Civil Procedure require him to mail to the lawyer(s) for Defendant (or Defendant herself in the event of a non-represented party) a true copy of anything he sends to the Court.  Failure to do so may result in dismissal of this case or other penalties.  Anything filed with the Court should specifically state that it has been sent to the lawyer(s) for Defendant.  Plaintiff should keep a true copy of everything he sends to Defendant or the Court.

Each party shall keep the Court apprised of a current address at all times while the action is pending.  Notice of any change of address must be filed promptly with the Court and served on other parties.

Plaintiff should always file a response to a motion by Defendant.  In particular, in the event Defendant files a motion for summary judgment, or moves to dismiss the Complaint, failure to respond may result in the dismissal of the case.

## V.    Leave to Amend

The Second Circuit has directed that district courts should not dismiss the claim of a self-represented party without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks omitted).  Leave to amend however, need not be granted where amendment would be "futile." *Garcia v. Super. of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (cautioning that a district court "should not dismiss a pro se complaint without granting leave to amend at least once, unless amendment would be futile") (internal quotation marks omitted).  "Amendment is futile where

the problems with the complaint's claims are substantive and not the result of inartful pleading."
*Biswas v. Rouen*, 808 F. App'x 53, 53 (2d Cir. 2020) (alteration and internal quotation marks
omitted).

The Federal Rules of Civil Procedure allow a party to "amend its pleading once as a
matter of course within . . . 21 days after serving it, or . . .  within 21 days after service of a
responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)."  Fed. R.
Civ. P. 15(a).  The Court will consider a motion to amend in due course should one be filed.

Should a Motion to Amend the Complaint be filed, Plaintiff is advised that a proposed
Amended Complaint must be titled "Amended Complaint" and include all of Plaintiff's factual
allegations in their entirety.  He must also set forth all the claims he has against all defendants
and all the relief he seeks.  Reference back to the original Complaint is insufficient.  *See* Fed. R.
Civ. P. 8(a); D. Vt. L.R. 15(b).  Equally important, an amended complaint must comport with the
Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim
as required by Rule 8, and doing so in numbered paragraphs as required by Rule 10, as well as
the Local Rules of Procedure.  *See* D. Vt. L.R. 15.

Plaintiff may consult the Court's Representing Yourself as a *Pro Se* Litigant Guide,
available at http://www.vtd.uscourts.gov/sites/vtd/files/ProSeGuide113015.pdf.

## Conclusion

Plaintiff's Application to proceed without prepaying fees (Doc. 1) is GRANTED.

For the reasons explained above, however, the Complaint (Doc. 3) is DISMISSED IN
PART.  Claim 1 (the § 1983 claim), Claim 2 (malicious prosecution and abuse of process),
Claim 4 (stalking, false imprisonment, and kidnapping), Claim 5 (assault), Claim 7 (fraud), and

Claim 9 (slander and libel) are DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

The Clerk of the Court shall accept the Complaint without prepayment of the required fees, and Plaintiff shall not be required to pay the fees for service of the Complaint.  Service of process shall be effected under 28 U.S.C. § 1915(d), and if necessary, by the U.S. Marshals Service.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 10th day of September 2021.

*/s/ Kevin J. Doyle*
United States Magistrate Judge